IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Stephen Kyle Martinez (#M-18635), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 C 50118 |
| | ) | |
| v. | ) | |
| | ) | Hon. Philip G. Reinhard |
| Merrill Zhatz, M.D., and | ) | |
| Wexford Health Sources, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant Wexford Health Sources, Inc.'s motion to dismiss [17] is denied.

**STATEMENT-OPINION**

Defendant Wexford Health Sources, Inc. ("Wexford") has filed a motion to dismiss count II of plaintiff's two-count First Amended Complaint. Neither Wexford nor defendant Merrill Zhatz have moved to dismiss count I. Therefore, even if the present motion were granted, the case would continue with discovery, which is currently being supervised by Magistrate Judge Schneider.

**BACKGROUND**

On March 15, 2021, plaintiff Stephen Kyle Martinez, who was then a prisoner at the Dixon Correctional Center ("Dixon"), filed a *pro se* complaint [1] alleging that he received inadequate medical care arising out of a salmonella poisoning incident. On June 8, 2021, this court conducted an initial screening of the complaint and found that plaintiff had stated a federal claim for deliberate indifference to his medical needs [9]. The court also granted plaintiff's motion for attorney representation and appointed him counsel. On September 20, 2021, appointed counsel filed a First Amended Complaint ("the complaint"), asserting one claim solely against Dr. Zhatz (count I) and another claim solely against Wexford (count II). The following allegations, taken from the complaint, set forth the relevant background:

> 21. On or about April 4, 2018, Martinez began to experience stomach pain, lower back pain, and severe diarrhea, and requested a sick call visit. During the week following the beginning of his symptoms, he was seen only by nursing staff on approximately 3 occasions, pursuant to IDOC policy regarding the sick call process which [process] is required prior to being seen by a physician.

> 22. On or about April 11, 2018, Martinez was seen by Dr. Merrill Zhatz, who, after examining him and listening to his description of severe symptoms, told

Martinez that he had indigestion and heartburn. He prescribed [Imodium] for the symptoms.

23. Despite following the medication instruction, Martinez's symptoms continued and worsened over the next weeks and months, such that he was doubled over in pain for days with severe lower back pain and diarrhea, and he suffered a weight loss of nine (9) pounds between April 11, 2018, and April 20, 2018, with continuing weight loss totaling approximately 35 pounds during the period.

\* \* \*

30. Also, during the period from April 11, 2018, through July 2018, Martinez was seen by Dr. Zhatz and other medical personnel for his continuing gastrointestinal symptoms which included pain described from time to time as "knife-like", "cramping" "tearing", and "clawing".

31. The condition ultimately resulted in Martinez being transferred to the infirmary in May, 2018, and also on other occasions, where he was under observation and in isolation for a period of time with treatment provided with the same antibiotic, Flagyl, without improvement in his condition.

32. Despite Martinez's severe pain and continuing symptoms, or about May 2, 2018, a request for gastrointestinal ("GI") panel for Martinez was denied by Wexford.

33. On or about May 29, 2018, upon Collegial Review requested by Dr. Zhatz, a GI consultation was denied by Wexford and on information and belief, Dr. Zhatz did not re-present the request for a long period of time.

34. Martinez later learned that stool sample testing performed in early May, 2018 by Katherine Bethea Shaw Hospital revealed detection of salmonella species and shiga toxin 1, and the test report noted that antibiotic treatment is not recommended as it may enhance toxin release and increase risk of HUS, a condition which may ultimately cause kidney failure.

35. Despite the receipt of this information from Katherine Bethea Shaw Hospital and UIC Hospital, and the lack of improvement in the symptoms of Martinez, Dr. Zhatz continued to prescribe an antibiotic, Cipro, to Martinez.

36. Only after almost 1 year of experiencing symptoms by Martinez, was an upper GI test conducted and a colonoscopy was performed at University of Illinois at Chicago on September 4, 2019, which on information and belief, revealed the existence of irritable bowel syndrome resulting from the infection which will be a lifelong condition for Martinez.

2

> 37. Martinez also experienced severe emotional distress as a result of the extreme pain and was made anxious by the extreme delay in his treatment in light of the fact that his symptoms had not lessened after several months of symptom complaints at medical visits.
>
> 38. Dr. Zhatz was familiar with Martinez's medical condition through his file and first-hand observations, as he was told by Martinez of his extreme pain and other symptoms. Dr. Zhatz recognized that Martinez had a serious medical condition because he ordered further testing for Martinez, which was denied by Wexford.
>
> 39. Wexford recognized the serious medical condition requiring treatment, as it finally approved Dr. Zhatz's recommendations for additional testing consisting of an upper GI endoscopy and a colonoscopy in September, 2019.

[14 at 5-7.]

Plaintiff further alleges in the complaint that Wexford relied on Utilization Management policies that include Referral Request, Collegial Review, and Alternate Treatment Plan policies. *Id.* at ¶¶ 12-14. Plaintiff then alleges that these policies were unconstitutional because Wexford had a "widespread practice of failing to review requests submitted by the Site Medical Directors [e.g. Dr. Zhatz] on a timely basis, and denying requested additional testing and outside medical treatment." *Id.* at ¶ 44.

## **ANALYSIS**

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, courts must "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

The sole issue raised by the present motion is whether plaintiff's allegations against Wexford in count II are sufficient to meet this plausibility standard to survive a motion to dismiss. For the purposes of § 1983 liability, private corporations like Wexford are treated as municipalities. *See Shields v. Illinois Dep't of Corr.,* 746 F.3d 782, 789 (7th Cir. 2014). This means they may not be held vicariously liable for the actions of their employees, and may be held liable only if the violation was caused by a policy or custom of the corporation itself. *Id.*; *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Municipal policies can take three forms: "(1) an

3

express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee,* 356 F.3d 740, 748 (7th Cir. 2004).

Plaintiff does not appear to be arguing that he can qualify under the first or third categories. At issue then is the second category. Wexford argues that plaintiff has only asserted "conclusory" and "boilerplate" allegations that there was a widespread custom of denying or delaying off-site referrals. However, Wexford acknowledges that plaintiff has alleged that, in two instances, referrals were denied. Specifically, on May 2, 2018, Wexford denied a request for a gastrointestinal panel; on May 29, 2018, Wexford denied a request for a gastrointestinal consultation. *See* Cmplt. ¶¶ 32-33. But Wexford argues that these two incidents are not enough to survive summary judgment based on two bright-line rules. First, a plaintiff may not rely solely on his own medical treatment to establish a widespread custom. Second, a plaintiff must allege more than three instances where the unconstitutional policy was applied. Although Wexford cites to several Seventh Circuit and district court cases to support these two contentions, the key case it relies on—and also the most recent one it cites—is *Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020). For these reasons, the court will concentrate its analysis on this case.

In *Hildreth*, which included a lengthy dissent by Judge Hamilton, the Seventh Circuit discussed these issues regarding a claim by an inmate with Parkinson's disease who alleged that the prison, on three occasions, was late by a few days in refilling his medications. The Seventh Circuit concluded that these three occasions were not enough to established a widespread custom:

> Three instances of prescription delays over nineteen months involving solely one inmate fail to qualify as a widespread unconstitutional practice so well-settled that it constitutes a custom or usage with the force of law. Although this court has not adopted any "bright-line rules" defining a widespread practice or custom, we have acknowledged that the frequency of conduct necessary to impose *Monell* liability must be more than three.

*Id.* at 427. In dissent, Judge Hamilton argued against adopting any bright-line rules and noted instances in the Seventh Circuit case law where the plaintiff-inmate was not required to "show some minimum number of injuries to prevail." *Id.* at 439 (citing to *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 382 (7th Cir. 2017) (en banc) and other Seventh Circuit cases); *see also* 960 F.3d at 441 ("we have never held that some minimum number of incidents is needed to establish municipal liability").

Although Wexford has made a reasonable argument for dismissing count II, the court concludes that it is premature at this point to dismiss the *Monell* claim. First, although *Hildreth* (and other cases) provide some support for Wexford's position, *Hildreth* at the same time acknowledges competing considerations and competing lines of case law on these *Monell* issues. Judge Hamilton's dissent summarizes many of the complexities in this case law. As for the "more than three instances" rule, the majority opinion did seem to endorse a bright-line rule in the excerpt

quoted above, although it stated in the very same sentence that the Seventh Circuit had *not* adopted any bright-line rules. As for the rule that a plaintiff may not rely solely on his own treatment history, the majority acknowledged a statement from earlier Seventh Circuit cases that "it is *not 'impossible'* for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience." *Id.* at 426 (emphasis added). In plaintiff's response brief, he cites to one post-*Hildreth* Seventh Circuit case stating that there are still no bright lines in this area. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) ("In our extensive case law on prison healthcare, we have not adopted bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell*.").[1]

Second, and perhaps more significantly, *Hildreth* and most of the cases cited by Wexford were resolved on motions for summary judgment or on motions at trial and not on motions to dismiss, as here. Plaintiff points out this fact several times in his response. *See* [24 at p. 4 ("Once again, Wexford attempts to support its arguments by citing to Seventh Circuit cases whose holdings do not relate to pleading requirements under Rule 8, but to sufficiency of evidence which must be provided at trial or when defending against a summary judgment motion.")]. While it is possible that the Seventh Circuit intended for these "rules" to apply with equal force when ruling on motions to dismiss, this conclusion is not yet clear to this court.[2]

Third, if this court were to dismiss count II now, it would likely do so without prejudice, which would mean that plaintiff might later seek to amend, which in turn might result in a second motion to dismiss. Rather than taking this route, the court finds that it is better to keep the case moving and proceed with discovery and allow defendants to raise these arguments later in a motion for summary judgment. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving[.]"); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 656 (7th Cir. 2021) ("Because of the doctrinal burdens of *Monell* discussed above, a plaintiff who has direct access only to his own medical records may well need discovery concerning the healthcare provided to others."). For all the above reasons, defendant Wexford's motion to dismiss [17] is denied.

Date: 2/18/2022  ENTER:

_Philip G. Reinhard_
United States District Court Judge

Electronic Notices. (LC)

---

[1] *Howell* was authored by Judge Hamilton.
[2] Although plaintiff's *Monell* allegations are somewhat conclusory, plaintiff has still included a fair degree of overall detail in his complaint about the 16-month sequence of medical treatment, including allegations about the denials of referral requests, his stay in the infirmary, lab tests conducted by Katherine Bethea Shaw Hospital, and other matters.

5